1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

9
10
11

| | |
|---|---|
| RANDY LEWIS WALLERICH, | ) Case No. CV 14-08487-JEM |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ORDER |
| | ) AFFIRMING DECISION OF THE |
| CAROLYN W. COLVIN, | ) COMMISSIONER OF SOCIAL SECURITY |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

12
13
14
15
16
17

## PROCEEDINGS

On November 7, 2014, Randy Lewis Wallerich ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits. The Commissioner filed an Answer on February 24, 2015. On August 4, 2015, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be affirmed and this case dismissed with prejudice.

18
19
20
21
22
23
24
25
26
27
28

**BACKGROUND**

Plaintiff is a 48-year-old male who applied for Supplemental Security Income benefits on December 30, 2010, alleging disability beginning May 28, 2010.  (AR 12.)  The ALJ determined that Plaintiff has not engaged in substantial gainful activity since December 30, 2010, the application date.  (AR 14.)

Plaintiff's claim was denied initially on August 9, 2011, and on reconsideration on May 8, 2012.  (AR 12.)  Plaintiff filed a timely request for hearing and on June 10, 2013, the Administrative Law Judge ("ALJ") Mary L. Everstine held a video hearing in Santa Barbara, California.  (AR 12.)  Claimant appeared in San Luis Obispo, California, and testified at the hearing.  (AR 12.)  Claimant was represented by counsel.  (AR 12.)  Vocational expert ("VE") Sharon Spaventa also appeared and testified at the hearing.  (AR 12.)

The ALJ issued an unfavorable decision on June 17, 2013.  (AR 12-23.)  The Appeals Council denied review on August 26, 2014.  (AR 1-4.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff only raises the following disputed issue as a ground for reversal and remand:

1.    Whether the ALJ provided specific and legitimate reasons for rejecting probative medical source opinions.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error.  Smolen v. Chater, 80 F.3d 1273 , 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance."  Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a

1  reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at

2  401 (internal quotation marks and citation omitted).

3       This Court must review the record as a whole and consider adverse as well as

4  supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Where

5  evidence is susceptible to more than one rational interpretation, the ALJ's decision must be

6  upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

7  "However, a reviewing court must consider the entire record as a whole and may not affirm

8  simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882

9  (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495

10 F.3d 625, 630 (9th Cir. 2007).

**THE SEQUENTIAL EVALUATION**

11       The Social Security Act defines disability as the "inability to engage in any substantial

12 gainful activity by reason of any medically determinable physical or mental impairment which

13 can be expected to result in death or . . . can be expected to last for a continuous period of not

14 less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has

15 established a five-step sequential process to determine whether a claimant is disabled.  20

16 C.F.R. §§ 404.1520, 416.920.

17       The first step is to determine whether the claimant is presently engaging in substantial

18 gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging

19 in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137,

20 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or

21 combination of impairments. Parra, 481 F.3d at 746.  An impairment is not severe if it does not

22 significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290.  Third, the ALJ must

23 determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R.

24 Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746.  If the impairment

25 meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen,

26 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the

27 claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir.

28

3

2001).  Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).  The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

### THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since December 30, 2010, the application date.  (AR 14.)

At step two, the ALJ determined that Plaintiff has the following medically determinable severe impairments: status post neuroplasty due to long thoracic nerve palsy, cervical degenerative disc disease with facet arthropathy, major depressive disorder, and a history of alcohol and cannabis abuse.  (AR 14-17.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (AR 17-18.)

The ALJ then found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the following limitations:

> Claimant cannot lift or carry more than 10 pounds occasionally or frequently with the dominant right upper extremity.  He can lift or carry up to 20 pounds occasionally and 10 pounds frequently with the left upper extremity.  He can sit, stand, or walk at least 6 hours in an 8-hour workday.  He is precluded from pushing, pulling, forward reaching, and at or above shoulder level reaching with the right upper extremity.  He is precluded from climbing ladders, crawling, working at unprotected heights, and driving or operating moving machinery.  He is limited to occasional climbing, balancing, stooping, kneeling, and crouching.  He is restricted to simple, repetitive tasks.

(AR 18-22.)  In determining the above RFC, the ALJ made an adverse credibility determination, which Plaintiff does not challenge here.  (AR 21.)

At step four, the ALJ found that Plaintiff has no past relevant work.[1]  (AR 22.)  The ALJ also found that, considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Claimant can perform, including the jobs of lot attendant and counter clerk.  (AR 22-23.)

Consequently, the ALJ found that Claimant was not disabled, within the meaning of the Social Security Act.  (AR 23.)

---

[1]  Claimant worked only briefly for a few months in 2007 and 2008 and earned well below the substantial gainful level.  His work activity was not performed at the substantial gainful level.  (AR 22.)

**DISCUSSION**

Plaintiff suffered an injury to his right shoulder in May 2010.  (AR 14-15, 309.)  He was diagnosed with winging of the right scapula and right long thoracic nerve palsy.  (AR 16.)  In March 2012, he underwent right supraclavicular brachial plexus exploration, neurolysis and decompression.  (AR 16.)  He also has the severe impairments of cervical degenerative disc disease, major depressive disorder, and a history of alcohol and cannabis abuse.  (AR 14.)

Notwithstanding Plaintiff's impairments, the ALJ assessed a light work RFC.  Plaintiff contends the ALJ did not properly consider the medical evidence in determining Plaintiff's RFC.  The Court disagrees.

**A.      Relevant Federal Law**

The ALJ's RFC is not a medical determination but an administrative finding or legal decision reserved to the Commissioner based on consideration of all the relevant evidence, including medical evidence, lay witnesses, and subjective symptoms.  See SSR 96-5p; 20 C.F.R. § 1527(e).  In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to the medical condition.  Robbins, 446 F.3d at 883.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians).  See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

1    Where a treating doctor's opinion is not contradicted by another doctor, it may be

2  rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  However, if the

3  treating physician's opinion is contradicted by another doctor, such as an examining physician,

4  the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons,

5  supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31; see also Orn, 495

6  F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Where a treating

7  physician's opinion is contradicted by an examining professional's opinion, the Commissioner

8  may resolve the conflict by relying on the examining physician's opinion if the examining

9  physician's opinion is supported by different, independent clinical findings.  See Andrews v.

10  Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632.  Similarly, to reject an

11  uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing

12  reasons.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  If an examining physician's

13  opinion is contradicted by another physician's opinion, an ALJ must provide specific and

14  legitimate reasons to reject it.  Id.  However, "[t]he opinion of a non-examining physician cannot

15  by itself constitute substantial evidence that justifies the rejection of the opinion of either an

16  examining physician or a treating physician"; such an opinion may serve as substantial

17  evidence only when it is consistent with and supported by other independent evidence in the

18  record.  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

19    **B.    Analysis**

20        1.    Physical Impairments

21    The ALJ relied on the opinions of State agency reviewer Dr. Anne Khong, consulting

22  internist Dr. Ursula Taylor, and UCLA physicians that performed Plaintiff's May 2012 right

23  shoulder surgery.  Dr. Khong's May 18, 2011, report precedes Plaintiff's May 2012 surgery and

24  is based on review of the medical records.  (AR 15, 21, 232-239.)  Dr. Khong opined Claimant

25  could perform light work, lifting and carrying 20 pounds occasionally and 10 pounds frequently.

26  (AR 15.)  He could sit, stand or walk 6 hours in an 8 hour workday.  (AR 15.)  He was precluded

27  from reaching above the shoulder in the right upper extremity (AR 239) and from frequent

28  pushing, pulling and working at or about right shoulder level.  (AR 15, 289.)  Dr. Khong noted

1   that Plaintiff was taking medication only for "the scapular pain (although this condition is often

2   painless)." (AR 238.)  She also concluded there was an element of "embellishment" to

3   Plaintiff's allegations.  (AR 15, 239.)  Other than noting that Dr. Khong did not and could not

4   consider the 2013 medical source statements of Dr. Lagattuta and Dr. Delio, Plaintiff offers no

5   argument or reason to reject Dr. Khong's RFC assessment.  Significantly, Plaintiff does not

6   challenge the ALJ's adverse credibility determination (AR 21), which is based partly on Dr.

7   Khong's opinion.

8        Both Plaintiff and the ALJ rely on the March 10, 2012, opinion of Dr. Taylor, the

9   consulting internist.  Dr. Taylor's examination occurred shortly after Plaintiff's March 2, 2012,

10  surgery.  (AR 16-27, 327.)  She noted Plaintiff guarded his right arm which was in a sling

11  throughout the examination (AR 16, 328-329.)  She explicitly stated, "The Claimant clearly does

12  appear to have significant tenderness."  (AR 330.)  Dr. Khong found the range of motion of all

13  joints to be normal except for the right arm.  (AR 16-17, 329.)  The spinal examination was

14  normal.  (AR 17.)  Notwithstanding his right shoulder pain, Dr. Taylor opined that Claimant can

15  lift and carry no more than 10 pounds occasionally and frequently "due to right arm and upper

16  back pain."  (AR 331.)  He was precluded from any pulling using his right arm.  (AR 331.)  The

17  ALJ's RFC contains these limitations for Plaintiff's right upper extremity but not for the left

18  upper extremity, as supported by Dr. Taylor's normal examination findings of the left arm.

19  There is no medical evidence of left arm impairments or limitations and Plaintiff never

20  complained of left arm pain.  The Court believes the ALJ properly interpreted Dr. Taylor's 10

21  pound restriction with no pulling to be limited to Plaintiff's right arm.  The ALJ's RFC limitations

22  are consistent with Dr. Khong's assessment and also with the findings of Plaintiff's treating

23  physicians at UCLA.  (AR 16, 20.)

24       Plaintiff relies heavily on the opinions of Dr. Francis Lagattuta and Dr. Delio, his treating

25  physicians.  Both physicians filed medical source statements in March 2013 opining that

26  Plaintiff was precluded from all work.  (AR 16, 17, 560-563.)  The ALJ, however, rejected these

27  opinions because they were not supported by medical examination findings.  (AR 20.)  An ALJ

28  may reject a treating physician's opinion that is not supported by his or her treatment notes.

8

1  Batson v. Comm'r, 359 F.3d 1190, 1195 n.3 (9th Cir. 2004); Bayliss, 427 F.3d at 1216.  Here,

2  the ALJ specifically found that Dr. Lagattuta's records reflected mild objective evidence (AR 20)

3  and entirely normal physical examinations.  (AR 16.)  The ALJ also found that Dr. Delio's RFC

4  was based on Claimant's subjective complaints of pain, which the ALJ found not credible.  (AR

5  20.)  A treating physician's opinion based on subjective complaints of a claimant whose

6  credibility has been discounted can be properly disregarded.  Tonapetyan v. Halter, 242 F.3d

7  1144, 1149 (9th Cir. 2001); Andrews, 53 F.3d at 1043.  Additionally, the contradictory opinions

8  of other physicians (Khong, Taylor, UCLA) provide specific, legitimate reasons for rejecting a

9  physician's opinion.  Tonapetyan, 242 F.3d at 1150.

10         The ALJ's physical RFC and rejection of the opinions of Dr. Lagattuta and Dr. Delio are

11  supported by her adverse credibility finding, which Plaintiff does not challenge.  The ALJ noted

12  that Dr. Lagattuta's records are replete with references to the Claimant requesting stronger and

13  larger doses of powerful pain medications (AR 16), even though objective medical findings

14  were mild.  (AR 20.)  Dr. Khong believed Claimant was not credible.  (AR 15.)  So did Dr.

15  Barrons.  (AR 21.) Dr. Taylor noted psychological issues.  (AR 17.)  There was exaggerated

16  behavior at the hearing.  (AR 21.)  He failed to pursue postoperative care after his surgery.

17  (AR 20.)  Numerous x-rays and MRI scans failed to reveal significant objective findings and

18  physical examinations were within normal limits.  (AR 21.)  The psychiatric examiner noted that,

19  despite Plaintiff's allegations of pain, he did not reposition himself or appear to be in any

20  discomfort due to pain throughout the evaluation.  In April 2013, only a month after Dr.

21  Lagattuta and Dr. Delio opined Plaintiff could not work, Santa Barbara Public Health

22  Department's examination found Plaintiff to have only "mild pain/distress."  (AR 17, 564.)

23  Plaintiff disagrees with the ALJ's evaluation of the evidence, but it is the ALJ's responsibility to

24  resolve conflicts in the medical evidence.  Andrews, 53 F.3d at 1039.  Where the ALJ's

25  interpretation of the record is reasonable, as it is here, it should not be second-guessed.

26  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

27

28

1    The ALJ rejected the opinions of Dr. Lagattuta and Dr. Delio for specific, legitimate

2  reasons supported by substantial evidence.  The ALJ's physical RFC is supported by

3  substantial evidence.

4              2.    Mental Impairments

5    Plaintiff also contends that he is disabled due to his severe mental impairments.  The

6  ALJ did find that Plaintiff has the severe mental impairment of major depressive disorder (AR

7  14), but nonetheless determined that Plaintiff could work if limited to simple, repetitive tasks.

8  (AR 18.)

9    Plaintiff relies on the May 24, 2011, opinion of Dr. Thomas Wylie, a consulting

10  psychiatric evaluator.  (AR 20-21, 240-247.)  Dr. Wylie reported that Plaintiff had not been

11  involved in psychotherapy or other mental health treatment but had been in a substance abuse

12  program by court order.  (AR 15.)  The ALJ found that Dr. Wylie's mental status examination

13  was within normal limits.  (AR 15.)  Plaintiff's speech and behavior were normal, his memory

14  average, and thought content normal, with no evidence of psychosis.  (AR 15.)  Nonetheless,

15  Dr. Wylie concluded Claimant was unable to function in most areas and could not perform any

16  work activity.  (AR 15.)

17    The ALJ rejected Dr. Wylie's functional assessment.  (AR 20.)  She found that Dr.

18  Wylie's mental status examination was within normal limitations (AR 20) and "unremarkable

19  (AR 21)," and thus did not support Dr. Wylie's opinion that Plaintiff could not work.  (AR 20.)  As

20  previously noted, an ALJ may reject a treating physician's opinion that is not supported by his

21  or her treatment notes.  Batson, 359 F.3d 1190, 1195 n.3 (9th Cir. 2004); Bayliss, 427 F.3d at

22  1216.  The ALJ also noted that Claimant denied any mental health treatment.  (AR 21.)  An ALJ

23  may consider the failure to seek treatment or lack of treatment in evaluating credibility.  Molina

24  v. Astrue, 674 F.3d 1104, 1113-14 (9th Cir. 2012) (failure to seek treatment is basis for

25  discounting credibility); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)

26  (unexplained or inadequately explained failure to seek treatment is a valid basis for discounting

27  credibility).  As previously noted, a treating physician's opinion based on subjective complaints

28  of a claimant whose credibility has been discounted can be properly disregarded.  Tonepetyan,

242 F.3d at 1149.  The ALJ also faulted Dr. Wylie's opinion because he did not indicate how Plaintiff's substance abuse factored into his opinion regarding the assessed functional limitations.  (AR 20.)

The contradictory opinions of other physicians are a specific, legitimate reason for rejecting a physician's opinion.  Tonapetyan, 242 F.3d at 1150.  Here, the ALJ relied on the March 10, 2012, opinion of consulting psychologist Dr. Roger Izzi.  (AR 17, 21, 332-336.) Claimant once again denied any mental health treatment.  (AR 17.)  He also told Dr. Izzi he quit working three months before his injury.  (AR 17, 21.)  Dr. Izzi found Plaintiff's speech normal and cognitive functioning intact.  (AR 17.)  His intellectual functioning was average.  (AR 17.) Based on this normal mental status examination (AR 21), Dr. Izzi diagnosed depressive disorder and limited Claimant to simple, repetitive tasks with moderate limitation in his ability to interact with peers.  (AR 17.)

Plaintiff asserts that Dr. Izzi did not review any medical records, but neither did Dr. Wylie.  There were no mental health records to review because Plaintiff never received any mental health treatment.  (AR 15, 16, 17.)  Plaintiff also faults Dr. Izzi for only performing partial testing (due to Plaintiff's pain), but Dr. Wylie performed no testing at all.  Plaintiff does not identify any particular test Dr. Izzi failed to perform or how it would be material.  Plaintiff's citation to Garcia v. Comm'r of Soc. Sec., 768 F.3d 925 (9th Cir. 2014), is inapposite because a complete set of IQ scores was necessary in determining whether the claimant on that case had an intellectual disability.  Those are not the facts of this case, which concerns a diagnosis of depression and an uncontested adverse credibility determination.

Also contradicting Dr. Wylie's opinion is Dr. Heather Barrons, a State agency psychiatric consultant.  (AR 16, 21, 263-276.)  In her July 26, 2011, psychiatric review, Dr. Barrons questioned Claimant's credibility due to lack of treatment or findings in the record, and also noted that Dr. Wylie's mental status examination was within normal limits.  (AR 16.)  She noted Plaintiff's cannabis and alcohol abuse.  (AR 16.)  She found only moderate impairments in functioning.  (AR 16, 21.)  She concluded that Claimant is able to maintain concentration, pace and persistence "for simple tasks with routine supervision."  (AR 276.)  Dr. Taylor also

1  conducted a mental status examination, finding Claimant to be properly oriented with adequate

2  memory, in no distress, and able to establish good rapport with the examiner.  (AR 328.)

3  Plaintiff does not address or respond to the opinions of Dr. Barrons or Dr. Taylor.

4       Dr. Wylie's opinion is further undermined by Claimant's lack of credibility, a finding

5  Claimant does not challenge.  As previously noted, a treating physician's opinion based on

6  subjective complaints of a claimant whose credibility has been discounted can be properly

7  disregarded.  Tonapetyan, 242 F.3d at 1149; Andrews, 53 F.3d at 1043.

8       Plaintiff disagrees with the ALJ's evaluation of the evidence but it is the ALJ's

9  responsibility to resolve conflicts in the medical evidence.  Andrews, 53 F.3d at 1039.  Where

10  the ALJ's interpretation of the record is reasonable as it is here, it should not be second-

11  guessed.  Rollins, 261 F.3d at 857.

12       The ALJ rejected the opinion of Dr. Wylie for specific, legitimate reasons supported by

13  substantial evidence.  The ALJ's mental RFC is supported by substantial evidence.

14                                    * * *

15       The ALJ's nondisability determination is supported by substantial evidence and free of

16  legal error.

17                              **ORDER**

18       IT IS HEREBY ORDERED that Judgment be entered affirming the decision of the

19  Commissioner of Social Security and dismissing this case with prejudice.

20

21  DATED: September 14, 2015                    _/s/ John E. McDermott_

22                                               JOHN E. MCDERMOTT
                                                 UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28